Electronically Filed
Intermediate Court of Appeals
29921
25-MAY-2011
08:17 AM

NO. 29921

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
ALAN KALAI FILOTEO, Defendant-Appellant.

APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(FC-CR NO. 07-1-0319)

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., and Fujise and Reifurth, JJ.)

Defendant-Appellant Alan Kalai Filoteo (Filoteo) appeals from the Judgment of Conviction and Sentence (Judgment) filed on May 29, 2009, in the Family Court of the Third Circuit (Family Court).[1]  After a jury-waived trial, the Family Court found Filoteo guilty of abuse of a family or household member, in violation of Hawaii Revised Statutes (HRS) § 709-906 (Supp 2010).[2]  The complaining witness (CW) was the mother of two of

---

[1]  The Honorable Lloyd Van De Car presided.

[2]  HRS § 709-906 (Supp. 2010) provides in relevant part:

   (1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member . . . .

   For the purposes of this section, "family or household member" means spouses or reciprocal beneficiaries, former spouses or reciprocal beneficiaries, persons who have a child in common, parents, children, persons related by consanguinity, and persons jointly residing or formerly residing in the same dwelling unit.

Filoteo's children and was residing with Filoteo at the time relevant to this case.

On appeal, Filoteo argues that the Family Court erred in: (1) granting the prosecution's motion to continue the trial and denying Filoteo's motion to dismiss the case; (2) permitting Chadwick Fukui, an investigator for the Hawai'i County Prosecutor's Office, to testify as a domestic violence expert and to opine on the CW's credibility; and (3) permitting Keith Biho, Filoteo's probation officer, to testify about statements made by Filoteo. We affirm Filoteo's conviction.[3]

I.

Shortly after midnight, Hawai'i County police officers went to the residence of Filoteo and the CW on June 27, 2007, in response to a report of possible domestic violence. By the time the officers arrived, Filoteo had left the premises. The CW appeared flustered and scared. The CW filled out a Domestic Violence Statement form which she signed. In her statement, the CW reported that Filoteo was upset because the CW had forgotten to turn off the stove. The CW wrote that Filoteo yelled at her, threw a cell phone at her, hit her in the back of the head, pulled her hair, and kicked her. The CW also reported that Filoteo had been drinking, that he hurt the CW with his hands, and that the CW felt pain.

---

[3] Although Filoteo was charged in the complaint with two counts of abuse of a family or household member, the Family Court, at the conclusion of trial, obtained the agreement of the prosecution and Filoteo that the two counts had merged because they were part of the same course of conduct. The Family Court thereafter found Filoteo guilty of a single offense of abuse of a family or household member. Nevertheless, the Family Court's Judgment incorrectly reflects that Filoteo was convicted of two counts and that Filoteo's sentence on these counts was imposed to run concurrent with each other. Filoteo does not raise the discrepancy in the Judgment as an issue on appeal, but simply states that he is seeking to have the Family Court issue a corrected Judgment. We find that the Family Court committed plain error in convicting and sentencing Filoteo on two counts of abuse of a family or household member, and we remand the case with instructions that the Family Court file an amended Judgment that reflects the merger of the two counts and enters a judgment of conviction and imposes sentence on a single count for abuse of a family or household member.

2

After the CW made her initial statement on June 27, 2007, regarding Filoteo's alleged abuse, the CW made several additional statements in which she vacillated about whether her report that Filoteo had physically abused her was true. At trial, the CW recanted her initial report (in the Domestic Violence Statement) that Filoteo had physically abused her. The CW testified that what she reported in the Domestic Violence Statement did not happen and that "all [she and Filoteo] did was argue."

The CW did not comply with subpoenas requiring her to appear as a witness in Filoteo's case and bench warrants were issued. On June 20, 2008, the Family Court issued a bench warrant for the CW based on her failure to appear on May 12, 2008. The CW apparently posted bail after the bench warrant was served and again failed to appear after being subpoenaed for Filoteo's trial on July 9, 2008. Prior to the commencement of trial on July 9, 2008, Filoteo moved to dismiss the case on the ground that the CW, a witness critical to the prosecution's case, was not present. The Family Court denied the motion.

The trial commenced on July 9, 2008. The prosecution called three witnesses then moved to continue the trial so that it could secure the CW's presence. Filoteo objected to the continuance and again moved for dismissal of the case. The Family Court granted the motion for continuance and denied the renewed motion for dismissal. In support of its rulings, the Family Court cited the efforts made by the prosecution to secure the CW's presence.

Trial was continued to September 5, 2008. The CW was served with a subpoena to appear on that date but failed to appear. The prosecution requested another bench warrant, which the Family Court issued, and the Family Court continued the trial to September 19, 2008. At Filoteo's request on September 19, 2008, the trial was further continued to October 17, 2008, to give the defense additional time to review additional discovery

3

provided by the prosecution.  The CW appeared and testified on October 17, 2008.

II.

A.

Filoteo claims that the Family court abused its discretion and violated his rights to due process and a speedy trial "when it granted the prosecution's request to continue and denied Filoteo's motion to dismiss."  Filoteo asserts that the prosecution was not "ready" for trial as it had represented on July 9, 2008, because the CW, an indispensable witness, had failed to appear.  Filoteo argues that by commencing the trial and then continuing it, the Family Court improperly allowed the prosecution to avoid a dismissal pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 48 (2000) because the HRPP Rule 48 time limits would otherwise have run.  The gist of Filoteo's argument is that the Family Court improperly commenced and then continued the trial because by doing so, it preempted his ability to obtain a dismissal pursuant to HRPP Rule 48.

Filoteo's arguments are without merit.  HRPP Rule 48(c)(4)(i) excludes the following from the speedy trial computation:  the period of a continuance granted at the request of the prosecutor "because of the unavailability of evidence material to the prosecution's case, when the prosecutor has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at a later date[.]"  Had the prosecution moved to continue Filoteo's trial before the trial commenced in order to secure the presence of the CW, the request for continuance would have satisfied this speedy trial exclusion.  Filoteo concedes that the CW was an essential witness, and the record shows that the prosecution exercised due diligence to secure the CW's presence.  Moreover, the CW's whereabouts were known and thus there were reasonable grounds to believe that the CW's presence could be obtained at a later date, such as through a bench warrant.  Filoteo would not have been entitled to a dismissal

4

under HRPP Rule 48 had the Family Court delayed the commencement of the trial. Accordingly, his claim that the Family Court's actions were improper because they preempted his ability to obtain a dismissal under HRPP Rule 48 must fail.

We review the Family Court's decision to grant a continuance for abuse of discretion. State v. Lee, 9 Haw. App. 600, 603-04, 856 P.2d 1279, 1281-82 (1993). We conclude that the need for the prosecution to secure the presence of the CW, an essential witness, provided a valid ground for the Family Court to continue the trial. Thus, the Family Court did not abuse its discretion in continuing the trial. We further conclude that the Family Court's decision to continue the trial and deny Filoteo's motion to dismiss did not violate Filoteo's constitutional rights to due process or a speedy trial. See Barker v. Wingo, 407 U.S. 514, 530-34 (1972); State v. Dwyer, 78 Hawai'i 367, 371-72, 893 P.2d 795, 799-800 (1995).

B.

Filoteo argues that the Family Court erred in permitting Investigator Chadwick Fukui (Investigator Fukui) to testify as a domestic violence expert because the prosecution failed to lay a sufficient foundation for the admission of Investigator Fukui's testimony as an expert. Filoteo also argues that the Family Court erred in allowing Investigator Fukui to opine on the CW's credibility. We reject these claims.

Investigator Fukui testified that he had previously served as a police officer for thirty-four years; that he had experience in thousands of domestic violence cases; that he had observed the development of the Domestic Violence Statement form; and that one of the reasons the form was developed was because domestic violence victims "will tell the police what happened" at the time of the offense but will "change their story" later on.

The prosecution also elicited the following testimony from Investigator Fukui:

> Q.    Mr. Fukui, when you met with [the CW] on
> September 9th, 2008, during that meeting did you have

5

> any indication, did you have a feeling that [the CW]
> was lying to you that day?
>
> A.     No, I did not.

Filoteo did not object to the prosecutor's question or to Investigator Fukui's answer.

Filoteo contends that an insufficient foundation was laid to permit Investigator Fukui to testify as an expert that one reason for the development of the Domestic Violence Statement form was the tendency of domestic violence victims to change their version of what happened as time passes from the incident. This testimony, however, does not appear to constitute expert opinion testimony because it only involved Investigator Fukui's statement of his personal knowledge of a reason for the form's development, which does not appear to require scientific, technical, or other specialized knowledge. See Hawaii Rules of Evidence Rule 702 (1993). Thus, we see no reason why Investigator Fukui would have to be qualified as an expert to state this testimony. In any event, Filoteo only challenged this testimony in the Family Court on discovery grounds and because the prosecution had recalled Investigator Fukui as a witness, and not on the ground that it constituted impermissible expert opinion. Accordingly, Filoteo waived the right to challenge Investigator Fukui's testimony on the ground that it constituted impermissible expert opinion. State v. Matias, 57 Haw. 96, 100-01, 550 P.2d 900, 903-04 (1976) ("[T]he making of an objection upon a specific ground is a waiver of all other objections." (internal quotation marks and citation omitted)).

Filoteo did not object to Investigator Fukui's testimony about whether he had an indication or feeling that the CW had lied to him. We conclude that Investigator Fukui's isolated comment on this subject does not rise to the level of plain error. Significantly, this was a bench trial, and in a bench trial it is presumed that the trial judge was not influenced by incompetent evidence. State v. Vliet, 91 Hawai'i 288, 298, 983 P.2d 189, 199 (1999); State v. Gutierrez, 1 Haw.

6

App. 268, 270, 618 P.2d 315, 317 (1980) (stating that the normal rule for a jury-waived trial "is that if there is sufficient competent evidence to support the judgment or finding below, there is a presumption that any incompetent evidence was disregarded and the issue determined from a consideration of competent evidence only"). Filoteo provides no basis to rebut this presumption.

C.

Keith Biho (Biho), Filoteo's probation officer, testified that on occasions when Filoteo's case was set for trial, but the CW failed to appear, Filoteo would come in to see Biho. These were not scheduled appointments. According to Biho, Filoteo would visit Biho prior to Filoteo's appearance in court and Biho would meet with Filoteo at Filoteo's request. Filoteo voluntarily came to talk to Biho about the pending case. Biho testified that Filoteo said that the CW told Filoteo's father that the CW would not be coming to court. Biho did not initiate the conversation that led to this statement.

Filoteo argues that the Family Court erred in allowing Biho to testify about what Filoteo had said because (1) Filoteo's statement to Biho had not been disclosed in discovery; and (2) the admission of Filoteo's statement violated HRS § 621-26 (1993)[4] and his constitutional right against self-incrimination. We reject this claim of error.

Filoteo does not show that he made a written request for discovery. Thus, he failed to establish his entitlement to discovery under HRPP Rule 16.1 (2000), which governs discovery in non-felony cases such as this one. In any event, the Family Court offered to continue the trial to give Filoteo more time to prepare for Biho's testimony about Filoteo's statement and thereby alleviate any potential prejudice. Filoteo declined this

---

[4] HRS § 621-26 provides: "No confession shall be received in evidence unless it is first made to appear to the judge before whom the case is being tried that the confession was in fact voluntarily made."

7

offer and cannot now complain that he was prejudiced by an alleged discovery violation.

The essential purpose for holding a voluntariness hearing before admitting a defendant's confession is to avoid tainting the jury with evidence (often extremely damaging to the defendant) that may be found to be inadmissible. See State v. Goers, 61 Haw. 198, 199-201, 600 P.2d 1142, 1143-44 (1979). Filoteo's case, however, involved a bench trial, where the trial judge is presumed not to be influenced by incompetent evidence. Vliet, 91 Hawai'i at 298, 983 P.2d at 199; Gutierrez, 1 Haw. App. at 270, 618 P.2d at 317.

Through its questioning of Biho prior to eliciting Filoteo's statement, the prosecution clearly established that Filoteo's statement was voluntary. The evidence showed that Filoteo's statement to Biho was made in the course of visits voluntarily arranged by Filoteo at Filoteo's request and disclosed during a conversation that Biho did not initiate. The undisputed evidence also plainly established that Filoteo's statement was not the product of a custodial interrogation and therefore no Miranda warnings were required. We conclude that in admitting Biho's testimony, the Family Court implicitly found that it was voluntary. We further conclude that any error in the Family Court's failure to make an explicit finding of voluntariness at a separate voluntariness hearing did not affect Filoteo's substantial rights. As noted, the record unequivocally shows that Filoteo's statement to Biho was voluntary. See State v. Salisbury, 498 S.E.2d 655, 666-68 (S.C. Ct. App. 1998), modified on other grounds, 541 S.E.2d 247 (S.C. 2001); Ramos v. State, 806 P.2d 822, 829 (Wyo. 1991).

III.

We affirm Filoteo's conviction for abuse of a family or household member. We remand the case with instructions that the Family Court file an amended Judgment that reflects the merger of the two counts alleged in the complaint and enters a judgment of

conviction and imposes sentence on a single count for abuse of a family or household member.

      DATED:  Honolulu, Hawai'i, May 25, 2011.

On the briefs:

Karen T. Nakasone
Deputy Public Defender
for Defendant-Appellant

Mary Ann J. Hollocker
Deputy Prosecuting Attorney
County of Hawai'i
for Plaintiff-Appellee

             Chief Judge

             Associate Judge

             Associate Judge